## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
## The Honorable Michael E. Romero

| | |
|---|---|
| In re: | Case No. 23-14158 MER |
| Worldwide Moving Systems LLC, | Chapter 7 |
| Debtor. | |
| Jeffrey A. Weinman, Chapter 7 Trustee, | |
| Plaintiff, | Adversary Pr. No. 24-1126 MER |
| v. | |
| Scot Seevers; Seevers Transfer & Storage, LLC; Gary M. Buchholtz; Buchholtz TLC Commercial LLC; Buchholtz LLC, and Bittersweet Liquor Investments LLC, | |
| Defendants. | |

## ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT

THIS MATTER comes before the Court on the Motion for Partial Summary Judgment ("**Summary Judgment Motion**") filed by the Plaintiff, Jeffrey Weinman, the Chapter 7 Trustee ("**Trustee**"), and the **Response** thereto filed by the Defendants Gary M. Buchholtz and Buchholtz TLC Commercial LLC (collectively "**Buchholtz Defendants**") and the Trustee's Reply.[1]

## SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), made applicable to this proceeding by Fed. R. Bankr. P. 7056, a court may award summary judgment only when there is no genuine dispute as to any material issue of fact to be tried, and the movant is entitled to judgment as a matter of law.[2]  In applying this standard, this Court examines the factual

---

[1] ECF Nos. 85, 91, 92.  The Second Amended Complaint asserts claims against two additional Buchholtz-related defendants—Buchholtz LLC and Bittersweet Liquor Investments LLC.  However, the Trustee's Motion for Summary Judgment does not ask for entry of judgment against those defendants and so the Court does not address them.

[2] *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986).

record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.[3]  The movant bears the burden of showing that no genuine issue of material fact exists.[4]  "If the moving party makes a prima facie case, the burden shifts to the nonmovant 'to go beyond the pleadings and set forth specific facts, identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein,' from which a rational trier of fact could find for the nonmovant."[5]  The nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory or unsupported by the record as a whole.[6]  Likewise, "[i]n responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'"[7]  Arguments of counsel cannot be the basis for a non-moving party to withstand summary judgment.[8]  Further, the evidence must show a genuine issue of material fact.  A fact is "material" if it "might affect the outcome of the suit under governing law."[9]  "Factual disputes that are irrelevant or unnecessary will not be counted."[10]

## UNDISPUTED MATERIAL FACTS

**A.     Rules and Procedures for Responses to Material Facts Asserted in a Motion for Summary Judgment**

A critical first step in adjudicating a motion for summary judgment is to identify the undisputed facts.  To assist with this step, the Federal Rules and the Local Bankruptcy Rules for this Court have specific, mandatory requirements for summary judgment motions and responses.  The Court quotes these Rules in detail because the Buchholtz Defendants have failed to comply with them.

---

[3] *Schwartz v. Bd. of Maint. of Way Emp.*, 264 F.3d 1181, 1183 (10th Cir. 2001).

[4] *Sports Unlimited, Inc. v. Lankford Enter., Inc.*, 275 F.3d 996, 999 (10th Cir. 2002).

[5] *Whitesel v. Sengenberger*, 222 F.3d 861, 866 (10th Cir. 2000) (citing *Mitchell v. City of Moore, Oklahoma,* 218 F.3d 1190, 1197 (10th Cir.2000).

[6] *Voter Reference Foundation, LLC v. Torrez*, 727 F.Supp.3d 1014, 1156 (D.N.M. 2024).

[7] *Id*. (citing *Colony Nat'l Ins. v. Omer*, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)).

[8] *Duran v. LaFarge North America, Inc*., 855 F.Supp.2d 1243, 1252 (D. Colo. 2012).

[9] *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

[10] *Id*.

Federal Rule of Civil Procedure 56 states, in relevant part:

(c) Procedures.

(1) Supporting Factual Positions.  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support that fact.

Local Bankruptcy Rule 7056-1 supplements this Rule by setting forth the following additional requirements for summary judgment motions and responses filed with this Court:

(a) Motion and Memorandum in Support.  Any motion for summary judgment pursuant to Fed. R. Bankr. P. 7056 must include:

(1) a statement of the burden of proof;

(2) the elements of the claim(s) that must be proved to prevail on the claim(s);

(3) a short and concise statement, in numbered paragraphs containing only one fact each, of the material facts as to which the moving party contends there is no genuine issue to be tried;

(4) a statement or calculation of damages, if any; and

(5) any and all citations of law or legal argument in support of judgment as a matter of law.

(b) Response and Memorandum in Opposition.  Responses in opposition must include:

(1) any competing statements concerning the burden of proof, including burden shifting, together with legal authority supporting such statements;

(2) any defenses to the elements of the claim(s) that must be proved to defeat such claim(s);

3

(3) a short and concise statement of agreement or opposition, in numbered paragraphs corresponding to those of the moving party, of the material facts as to which it is contended there is a genuine issue to be tried;

(4) a short and concise statement, in numbered paragraphs containing only one fact, of any additional facts as to which the opposing party contends are material and disputed;

(5) a statement or calculation of damages, if any; and

(6) any and all citations of law or legal argument in opposition to judgment as a matter of law.

Each alleged fact or contravention of fact (whether by the movant or the non-movant) must be properly supported.  Local Bankruptcy Rule 7056-1(c) provides:

(c) Supporting Evidence.  Each statement by the movant or opponent pursuant to subdivisions (a) or (b) of this Rule, including each statement controverting any statement of material fact by a movant or opponent, must be followed by a citation to admissible evidence either by reference to a specific number of an affidavit under penalty of perjury or fact contained in the record[.][11]

When a party fails to meet these requirements, both the Federal and Local Rules provide the Court with various options.  Federal Rule 56 states:

(e) Failing to Property Support or Address a Fact.  If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or

(4) issue any other appropriate order.[12]

Similarly, L.B.R. 7056-1(d) states what happens if a non-movant does not properly controvert alleged undisputed facts:

---

[11] L.B.R. 7056-1(c), (d).

[12] 11 U.S.C. § 362(c), (e).

(d) Admission of Facts. Each numbered paragraph in the statement of material facts served by the moving party is deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement served by the opposing party.

## B.     Buchholtz Defendants' Response

The Response filed by the Buchholtz Defendants fails to comply with these Rules. The Trustee's Summary Judgment Motion lists 40 numbered paragraphs of alleged undisputed material facts, including citations to evidence supporting each fact, as required by Rule 56 and L.B.R. 7056-1.[13] The Response filed by the Buchholtz Defendants should have, but fails to, list corresponding paragraphs numbered 1-40 that either agreed or opposed these alleged undisputed facts. Instead, the Response includes a section titled "Disputed Facts" with paragraphs numbered 1-7.[14] In each paragraph, the Buchholtz Defendants argue some assertion or argument in the Summary Judgment Motion is untrue, partially untrue, or a mischaracterization, followed by factual assertions meant to contravene the Trustee's facts or legal arguments. However, none of the Buchholtz Defendants' factual assertions are supported by a citation to admissible or relevant evidence.[15] Although the Buchholtz Defendants did attach three exhibits to their Response, none were tied to specific alleged "Undisputed Facts" alleged by the Buchholtz Defendants or the Trustee.[16] Failing to cite any record support, either by the movant in support of an asserted material fact or by an opposing party in response to a motion's material facts, is insufficient to raise a genuine issue of material fact.[17] A blanket statement that a material fact is "untrue," without any support in the record, does not comply with the requirements of Fed. R. Civ. P. 56(c) or Local Bankruptcy Rule 7056-1. Nor is it the Court's duty to match exhibits or find support for

---

[13] Summary Judgment Motion, at 3-9.

[14] Response, at 4-6.

[15] The Buchholtz Defendants' "Disputed Facts" cites only two exhibits—an Amended Statement of Financial Affairs filed in Debtor's main case and a deposition transcript attached to the Trustee's Summary Judgment Motion. Response, ECF No. 91, at 5, ¶¶ 3, 4. The Amended SOFA does not concern or support the Buchholtz Defendants' assertion that Trustee "made no attempt to contrast the revenue streams with the operating expenses to determine profits of the debtor." *Id*. at ¶ 3. Likewise, the deposition transcript cited by Defendants does not concern Defendants' denial that "STS was a continuation of Debtor." *Id*. at ¶ 4. Instead, Defendants offer it only to argue that the Trustee "mischaracterized" a portion of the deposition transcript of Mr. Buchholtz about a different topic—selection of the interest rate for the promissory note. On that topic, both the Trustee and the Buchholtz Defendants cite to the same deposition testimony.

[16] Defendants cite to these three exhibits in the body of their Response. The extent to which any of these exhibits contravene a material fact offered by the Trustee is discussed below in the Analysis section.

[17] *See Little v. Mannas*, 2023 WL 4559989, at *3-4 (E.D. Okla. July 17, 2023) (finding opposing party's brief in opposition to motion for summary judgment was inadequate and did not create disputes of material fact where response was unsupported by evidentiary materials).

the Buchholtz Defendants' various arguments.  "Judges are not like pigs, hunting for truffles buried in briefs."[18]

Because the Buchholtz Defendants have not disputed any of the Trustee's proffered facts by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute, or that [Trustee] cannot produce admissible evidence to support that fact,"[19] Rule 56(e) and Local Bankruptcy Rule 7056-1(d) allow the Court to "consider the fact[s] undisputed for purposes of the motion."[20]  The discovery cutoff in this case was September 1, 2025.[21] The Buchholtz Defendants have had ample opportunity to conduct discovery and properly support or address the material facts offered by the Trustee.  Therefore, the Court will, in its discretion, consider the facts uncontroverted by evidence to be deemed admitted for purposes of the Summary Judgment Motion.

However, even if considering those facts admitted or undisputed, the Court must still determine whether those material facts, as well as the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue of material fact and that the Trustee is entitled to judgment as a matter of law on two of the claims in his Second Amended Complaint—preference avoidance and aiding and abetting fraudulent transfer.

## C.   Undisputed Facts on Summary Judgment

The Debtor in this case, World Wide Moving Systems LLC, was formerly in the business of providing moving services and short- and long-term storage for private persons and the military.  The Debtor filed a Chapter 7 bankruptcy case on September 15, 2023 ("**Petition Date**").  Defendant Gary Buchholtz ("**Mr. Buchholtz**") owns 100% of Debtor, as well as Defendant Buchholtz TLC Commercial LLC ("**TLC**").[22]  When it was still operating, Debtor's business was located at 501 S. Francis Street in Longmont, Colorado 80501 (the "**Francis Property**").[23]  TLC owned the Francis Property and

---

[18] *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

[19] Fed. R. Civ. P. 56(c)(1).

[20] Fed. R. Civ. P. 56(e); L.B.R. 7056-1(d).

[21] *See* ECF No. 70.

[22] Summary Judgment Motion, Undisputed Material Facts, ¶ 2-3.

[23] *Id.* ¶ 5.

leased it to the Debtor.[24] Defendant Scot Seevers ("**Seevers**") is a lifelong family friend of Mr. Buchholtz.[25] Seevers formerly acted as the Debtor's general manager.[26]

The Debtor was not always consistent in meeting its monthly rent obligation to TLC.[27] Leading up to the bankruptcy filing, the Debtor was not current on its rent obligations and, according to Buchholtz, was "not even close."[28] The Debtor owed TLC $263,346 in rent as of the Petition Date.[29] In the year prior to the Petition Date, the Debtor transferred $124,400 to TLC for rental payments.[30] In this adversary proceeding, the Trustee seeks to avoid and recover these rent payments from TLC as preferential transfers.

The Trustee's other claim for aiding and abetting fraudulent transfer against Mr. Buchholtz and TLC relates to the prepetition sale of substantially all the Debtor's assets to a company owned by Seevers, the Debtor's former manager. Prior to the sale, the Debtor was named as a defendant in a personal injury suit in state court. A jury trial was held in January 2023. On January 27, 2023, the jury entered a verdict against the Debtor in the amount of $1,450,250.[31] Shortly thereafter, Mr. Buchholtz and Seevers discussed how to address the liability arising from the jury verdict so the Debtor's business could continue.[32] They created and considered a "pros and cons" breakdown for various chapters of the Bankruptcy Code.[33] One of the "pros" was that if the Debtor completed an asset sale, no liabilities would follow its successor.[34] Ultimately, the men determined to transfer the Debtor's assets, but not its liabilities, to a newly formed company owned by Seevers, called Seevers Transfer & Storage, LLC ("**STS**").[35]

On February 10, 2023, two weeks after the jury verdict, Mr. Buchholtz and Seevers signed an "Agreement for the Purchase of Assets" ("**APA**") pursuant to which

---

[24] *Id.* ¶ 6.

[25] *Id.* ¶ 4.

[26] *Id.*

[27] *Id.* ¶ 8.

[28] *Id.*

[29] *Id.* ¶ 9.

[30] *Id.* ¶ 10.

[31] *Id.* ¶ 11.

[32] *Id.* ¶ 12.

[33] *Id.* ¶ 13.

[34] *Id.*

[35] *Id.* ¶ 14.

7

Debtor sold its assets to STS.[36] After entering the APA, STS took over Debtor's business but little changed other than ownership.[37] STS operated out of the Francis Property.[38] Customers, offices, assets, phone lines, and most everything else except email addresses and software stayed the same.[39] One month later, the state court entered its final judgment, adjusting the jury verdict amount to $1,520,369.[40] The Debtor did not appeal that judgment.

The APA required STS to pay a total of $1,150,000 for the Debtor's assets, consisting of a promissory note in the amount of $1,092,500 and a cash down payment of $57,500.[41] The promissory note STS provided under the APA was for 30 years at a 1.5% interest rate.[42] Mr. Buchholtz selected the interest rate and term of the promissory note for the purpose of aiding Seevers and STS.[43] Mr. Buchholtz did not try to obtain what he thought the company was worth; he obtained what he thought STS could pay because he wanted the business to continue.[44] When adjusted to present value, the consideration provided by the promissory note under the APA was $366,847.54.[45] The Debtor never received the cash down payment.[46] Through Mr. Buchholtz, the Debtor directed STS to pay the $57,500 down payment to TLC instead.[47] The Trustee seeks to recover the down payment as a preferential transfer.

The APA specified the following values for Debtor's assets:[48]

| | |
|---|---|
| Fixtures/Furniture/Equipment | $75,500 |
| Vehicles | $899.000 |
| Goodwill/Other Intangibles/noncompetition Agreement | $75,000 |

---

[36] *Id.* ¶ 13.

[37] *Id.* ¶ 26.

[38] *Id.* ¶¶ 26, 30.

[39] *Id.* ¶ 26.

[40] *Id.* ¶ 11.

[41] *Id.* ¶ 18.

[42] *Id.* ¶ 20.

[43] *Id.* ¶¶ 20, 25.

[44] *Id.*

[45] *Id.* ¶ 21.

[46] *Id.* ¶ 19.

[47] *Id.*

[48] Id. ¶ 37-38.

8

|  |  |
|---|---|
| Inventory | $43,000 |
| **Total** | **$1,092,500** |

Messrs. Buchholtz and Seevers determined the APA asset values.[49]  In particular, Mr. Buchholtz used the Kelly Blue Book to determine the value of the vehicles, and Seevers used the Ritchey Brothers Auctioneers for appraisals to determine the value of the equipment.[50]  The total of the APA values listed above ($1,092,500) matched the face value of the promissory note but significantly exceeded the note's present value.

The APA did not specifically mention one of the Debtor's primary sources of revenue—contracts with the United States Department of Defense ("**DoD**") for storing service member property.[51]  In 2022, the Debtor earned at least $472,651 from these contracts.[52]  To perform these contracts, the Debtor had previously obtained a "SCAC Code" issued by the DoD, which allowed the Debtor to store service member property at the Francis Property.[53]  The SCAC code applied only to the Francis Property itself and was not assignable.[54]  After the Debtor's assets were sold to STS, Mr. Buchholtz caused STS to receive all DoD payments from storing servicemembers' belongings at the Francis Property, which had been taken over by STS, "because STS signed a lease to . . . Buchholtz TLC Commercial."[55]  STS subsequently received $620,191 in revenue from those DoD contracts between 2023 and 2024.[56]  Mr. Buchholtz and Seevers valued this revenue stream or "military component" of the Debtor's business, along with goodwill, other intangibles, and a noncompetition agreement, at $75,000 under the APA.[57]

After the Petition Date, the Trustee filed this adversary proceeding against Seevers, STS, Buchholtz, and TLC, alleging, among other claims, that the sale of Debtor's assets to STS was a fraudulent transfer.  Seevers and STS failed to appear or defend the Trustee's claims.  On August 22, 2024, the Court granted the Trustee's motion for default judgment against Seevers and STS on claims that the APA sale was a fraudulent transfer.[58]  The Court ordered Seevers and STS to turn over to the Trustee

---

[49] *Id.* ¶¶ 39-40.

[50] *Id.*

[51] *Id.* ¶ 28.

[52] *Id.* ¶ 28.

[53] *Id.* ¶ 29, 32.

[54] *Id.*

[55] *Id.* ¶ 30.

[56] *Id.* ¶¶ 34-36.

[57] *Id.* ¶ 37.

[58] ECF No. 31.

all titles for property transferred to the Debtor under the APA.  On March 20, 2025, two years after signing the APA, the Trustee recovered some (but not all) of the equipment, and sold it at auction for $69,984.[59]  In his Summary Judgment Motion, the Trustee seeks entry of judgment on two of the remaining claims asserted against the Buchholtz Defendants in the Second Amended Complaint – the seventh claim for avoidance of preferences and the tenth claim for aiding and abetting fraudulent transfers.

## ANALYSIS

### A.    Preference Claim § 547

The Trustee's seventh claim seeks to avoid preferential payments pursuant to 11 U.S.C. § 547.[60]  The alleged preferences are: $124,400 in rent payments made by the Debtor to TLC between September 2022 and February 2023, and the $57,500 downpayment from the APA transaction that STS owed to the Debtor but instead paid to TLC in March 2023.  To succeed on his § 547 claim, the Trustee must prove, by a preponderance of the evidence, that each of these transfers: (1) is of an interest of the debtor in property; (2) is for the benefit of a creditor; (3) is made for or on account of an antecedent debt owed by the debtor before the transfer was made; (4) is made while the debtor is insolvent; (5) is made on or within ninety days [or one year if the transferee is an insider] before the date the bankruptcy petition was filed; and (6) allows the creditor to receive more than the creditor would otherwise be entitled to receive from the bankruptcy estate.[61]  The Buchholtz Defendants do not dispute the Trustee has met the first, second, and fifth elements.  Thus, the Court will address elements three, four, and six.

### 1.    Element 3—Antecedent Debt

The third element requires the Trustee to prove the transfers were made for or on account of antecedent debt owed by the Debtor before the transfer was made.  The term "antecedent debt" is not defined by the Bankruptcy Code but is generally defined to be a debt "incurred before the allegedly preferential transfer."[62]  Thus, meeting this element requires looking at the temporal relationship between the date the debt was incurred and the date of the alleged preferential transfer.  The Buchholtz Defendants point to the Debtor's lease with TLC and argue the Debtor incurred a new debt for each month's rent on the first of each month when the rent was due.  When Debtor made the disputed rent payments, TLC alleges, without supporting evidence, that it applied those

---

[59] Case No. 2314158, ECF No. 100.

[60] All references to "section" or "§" shall refer to Title 11, United States Code, unless expressly stated otherwise.

[61] *Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1196 (10th Cir. 2002).

[62] *Hill v. Brewer Oil Co. (In re Indian Capitol Distributing, Inc.)*, 484 B.R. 394, 401 (Bankr. D.N.M. 2012) (citing *Peltz v. Edward C. Vancil, Inc. (In re Bridge Info. Sys.)*, 474 F.3d 1063, 1066–67 (8th Cir. 2007)).

payments to the current month's rent obligation rather than to the past-due amount. Thus they were not payments on an "antecedent" debt.

Courts disagree on when a lease debt is incurred when a lease requires periodic rent payments over time.  Some courts hold that a debt for the full lease term is incurred when the lease is first signed.[63]  Although the monthly rent payments are not due at the beginning of the lease, these courts conclude that fact simply makes the debt "unmatured" and an unmatured debt is nonetheless a debt for purposes of the Bankruptcy Code.[64]  Under this analysis, a debtor's payment of monthly rent will almost always be on account of an antecedent debt because the debt was incurred when the lease was first signed.

Other courts, including the Tenth Circuit, reject this analysis, concluding instead that a debtor-tenant becomes indebted for rent only as the lease term progresses and the debtor occupies the premises under the leasehold.[65]  Accordingly, these courts hold that a lease debt accrues in monthly increments on the actual dates the rent is due.  Under this scenario, courts look at whether each contested rent payment was made on the due date or sometime after.  "Current rent payments are not on account of an antecedent debt; late rent payments are on account of an antecedent debt."[66]  The key is when the debtor made each payment relative to the lease due date, not how the landlord applied the rent.

Although the Tenth Circuit considered the issue under a different subsection of § 547, this Court nevertheless finds that court's interpretation persuasive for purposes of determining antecedent debt under § 547(b).[67]  That means the Debtor in this case incurred a new rent debt under its lease with TLC on the first of each month.  To the extent the Debtor made a timely payment for that month's rent on the first of the month, such payment would not be on account of antecedent debt.  If the Debtor paid the rent

---

[63] *Gugino v. Coble (In re Callaway)*, 2008 WL 4261087, at *4 (Bankr. D. Idaho Sept. 12, 2008); *Midwest Holding #7, LLC v. Anderson (In re Tanner Family, LLC)*, 556 F.3d 1194, 1196-97 (11th Cir. 2009).

[64] *In re Tanner Family, LLC*, 556 F.3d at 1196-97.

[65] *Bernstein v. RJL Leasing (In re White River Corp.)*, 799 F.2d 631, 633 (10th Cir. 1986); *First Trust Nat'l Assoc. v. Am. Nat'l Bank & Trust Co. of Chicago (In re Adventist Living Centers, Inc.)*, 174 B.R. 505, 515 (Bankr. N.D. Ill. 1994) ("[A] debt arose on the part of the Debtor when the lease payments fell due. Conversely, the Landlord had a right to payment and had a claim for each month's obligation on the date each payment fell due."); *Southern Technical College v. Graham Prop. P'ship (In re Southern Technical College, Inc.)*, 199 B.R. 46, 49 (Bankr. E.D. Ark. 1995) ("[T]he debtor's obligation to pay the rental payments were incurred as each payment became due, on the first of each month.").

[66] *Husted v. Taggart (In re ECS Refining, Inc.)*, 625 B.R. 425, 458 (Bankr. E.D. Cal. 2020); *Krommenhoek v. Bankr. Estate of Pfankuch Food Services, Inc. (In re Pfankuch)*, 393 B.R. 18, 23 (Bankr. D. Idaho 2008) ("An obligation to pay past due rent is an antecedent debt."); *In re Southern Technical College, Inc.*, 199 B.R. at 49 ("Since the February rent was due on February 1, but not paid until March 2, that transfer was on account of an antecedent debt.").

[67] *In re White River Corp.*, 799 F.2d at 633 (considering the issue for purposes of interpreting the 1982 version of § 547(c)(2)(B) (now repealed)).

*after* the first of the month, the payment would be on account of antecedent debt. Unfortunately, the Court cannot readily make this determination because no party provided the dates on which the Debtor made the contested rent payments. The Buchholtz Defendants provided the following chart regarding the rent payments:[68]

| Rent Paid PER 2022-2023 | | |
|---|---|---|
| Time Period | | Amount |
| 9/1/2022 | 9/30/2022 | $ 10,500.00 |
| 10/1/2022 | 10/31/2022 | $ 14,000.00 |
| 11/1/2022 | 11/30/2022 | $ 18,500.00 |
| 12/1/2022 | 12/31/2022 | $ 14,000.00 |
| 1/1/2023 | 1/31/2023 | $ 5,500.00 |
| 2/1/2023 | 2/28/2023 | $ 16,900.00 |
| 3/1/2023 | 3/31/2023 | $ - |
| 4/1/2023 | 4/30/2023 | $ 45,000.00 |
| 5/1/2023 | 5/31/2023 | $ - |
| 6/1/2023 | 6/30/2023 | $ - |
| 7/1/2023 | 7/31/2023 | $ - |
| 8/1/2023 | 8/31/2023 | $ - |
| 9/1/2023 | 9/30/2023 | $ - |
| 10/1/2023 | 10/31/2023 | $ - |
| 11/1/2023 | 11/30/2023 | $ - |
| 12/1/2023 | 12/31/2023 | $ - |
| | Total | $ 124,400.00 |

Obviously, no payment dates are specified in this chart. However, the Buchholtz Defendants admit that TLC received the last two rent payments for February 2023 ($16,900) and April 2023 ($45,000) *after* entry of the state court judgment in March 2023.[69] A payment received in March for February rent is necessarily on account of antecedent debt. The April payment is also necessarily on account of antecedent debt because, by that time, the Debtor had sold its assets to STS under the APA and STS had taken over the lease. The Debtor had no current rent obligation in April 2023 and any payment would have been on account of past due rent.

Thus, the Trustee has adequately established that the February 2023 ($16,900) and April 2023 ($45,000) rent payments were on account of antecedent debt. The Trustee has also shown that the $57,500 down payment Debtor paid to TLC on March 20, 2023, was on account of the antecedent debt created by the APA signed on

---

[68] Response, at 9.

[69] Response, at 8 ("Only $61,900 of the $124,400 in rent paid to TLC was paid after the Portschi Judgment.").

12

February 10, 2023.  The Buchholtz Defendants do not dispute this conclusion or even address the downpayment in their Response.  Thus, the Trustee has established the third element as to $119,400 in alleged preferential payments.   The Court lacks sufficient information to make that determination for the other five rent payments, totaling $62,500.

       2.       *Element 4—Insolvency*

The fourth element the Trustee must establish is that the Debtor made the transfers while insolvent.  The term "insolvent" is defined in the Code as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property . . . ."[70]  Courts refer to this as the "balance sheet test."[71]  There are two key periods in which to consider the Debtor's insolvency—before the APA sale and after.  The Trustee's Summary Judgment Motion argues the Debtor was insolvent in both these periods.  For the latter period, the Trustee relies on an expert report by Michael McCloskey that concludes the Debtor was insolvent as of the date of the APA transaction on February 10, 2023.[72]  McCloskey's report includes an adjusted balance sheet for the Debtor showing liabilities exceeding assets by at least $625,521 as of February 10, 2023.[73]

The Buchholtz Defendants offer their own expert report authored by Peter Linder.[74]  Linder does not opine on whether or when the Debtor became insolvent but instead criticizes certain aspects of McCloskey's report.  Importantly, Linder's report does *not* dispute McCloskey's opinion that the Debtor was insolvent as of February 10, 2023.  Instead, Linder disagrees with McCloskey adjusting the Debtor's 2022 balance sheet to reflect a $50,000 contingent liability for the state court lawsuit prior to entry of the jury's verdict on January 26, 2023.  That criticism, even if valid, has no impact on the Debtor's insolvency at the time of sale because, by that point, the jury verdict had entered, and the debt was no longer contingent.  Thus, the Buchholtz Defendants' proffer of Linder's expert report does nothing to dispute the Debtor's insolvency as of February 10, 2023.[75]

---

[70] 11 U.S.C. § 101(32).

[71] *Kim v. White Resources, LLC (In re Sklar Exploration Co., LLC)*, 649 B.R. 45, 50 (Bankr. D. Colo. 2023).

[72] Summary Judgment Motion, Ex. 11.

[73] *Id*., at Ex. A.  Although the Debtor sold substantially all its assets in the APA transaction, the adjusted balance sheet includes them as being assets of the Debtor.  Even with those assets included, the Debtor is insolvent due to the size of the state court jury verdict/judgment.

[74] Response, Ex. 3.  Neither party disputes the expertise McCloskey or Linder, nor contests the admissibility of the expert reports.

[75] Linder also disputes the values McCloskey assigned to the Debtor's assets as "materially overstated." *Id*. at 2.  If Linder is correct and the asset values listed on the adjusted balance sheet should be lowered, the Debtor would be insolvent to an even greater extent than reflected in McCloskey's report.

In their Response, the Buchholtz Defendants assert that "Debtor wasn't necessarily insolvent at the time of the sale to STS.  The [state court judgment] was a shock to all the involved parties.  Further, based on the promissory note associated with the APA, Debtor thought it would be solvent after the sale, with the assets changing character."[76]  The Buchholtz Defendants wholly fail to support this assertion with any evidence.  Nor could they.  The Debtor transferred substantially all of its assets to STS in the APA sale.  The Debtor's only significant asset after the sale was the promissory note provided by STS.  McCloskey's report sets the fair value of that promissory note at only $366,847, a conclusion with which Linder's agrees.[77]  This value is far below the $1,520,369 state court judgment.  Even when considering the face value of the promissory note ($1,092,500), the amount of the state court judgment dwarfs that value by $427,869.  The Buchholtz Defendants make no indication as to which other assets the Debtor retained post-sale to cover this deficiency.[78]  Simply stating, without supporting evidence, the Debtor's belief it would be solvent after the sale is insufficient to create a disputed issue of fact.  The Court therefore concludes the Trustee has established that the Debtor was insolvent as of February 10, 2023, and was therefore, insolvent when the Debtor paid rent for February 2023 ($16,900), April 2023 ($45,000), and caused the $57,500 down payment to be paid to TLC.

For insolvency during the pre-sale period, the Trustee points to deposition testimony by Mr. Buchholtz in which he admits that the Debtor was insolvent in an undefined period before the APA transaction due to many factors, including the COVID pandemic, the loss of a valuable contract with North American Van Lines, and Mr. Buchholtz's health issues.[79]  The Buchholtz Defendants' Response makes no attempt to contradict this testimony.  Indeed, Mr. Buchholtz did not provide an affidavit to support any of the assertions in the Response.  While Mr. Buchholtz's deposition testimony is persuasive, there is one important piece of contradictory evidence—McCloskey's report.  McCloskey contends numerous adjustments must be made to the Debtor's 2022 balance sheet.  One is to add a $50,000 contingent liability for the state court lawsuit.[80]  Another is to adjust the Debtor's asset values to align with those set forth in the APA.  After making those "fair value" adjustments, McCloskey notes that the Debtor is *solvent*

---

[76] Response, at 16.

[77] Summary Judgment Motion, Ex. 11, at 7; Response, Ex. 3, at 2 ("I reviewed Mr. McCloskey's present value analysis of the fair value of the APA buyer's non-cash consideration for the APA assets and I believe his analysis is reasonable and appropriate.").

[78] McCloskey's expert report indicates the Debtor may have retained a few fixed assets in the form of a recreational vehicle, truck and minor equipment valued at $88,000.

[79] Summary Judgment Motion, at 5, ¶ 27 (citing Deposition Transcript of Gary Buchholtz, attached as Exhibit 12 at 247:18-248:20).  The Trustee also cites Ex. 1. at 97:18-22, but that portion of the February 28, 2024 deposition transcript is not attached to the Summary Judgment Motion.

[80] The Buchholtz Defendants' expert, Linder, contends this $50,000 adjustment is not required.  The Court need not decide if the adjustment is appropriate because, if you remove it, the Debtor remains solvent as of December 2022.

as of December 31, 2022.[81]  It is only after the state court judgment is recognized in early 2023 that the adjusted balance sheet reflects the Debtor's insolvency.[82]

Whether or not the Debtor was insolvent in the months leading up to the Petition Date will largely depend on the value of its assets.  The Trustee relies on the values that Seevers and Mr. Buchholtz assigned to the assets in the APA.  The Buchholtz Defendants argue those values were inflated and point to the much lower amounts the Trustee received when auctioning some of the assets two years after the sale.  This creates a genuine issue of disputed fact that precludes summary judgment as to Debtor's insolvency prior to February 10, 2023.  The Trustee therefore failed to establish the Debtor's insolvency when the Debtor paid the five rent payments for September 2022 through January 2023.

          3.      *Element 6—Creditor Receives More Than Otherwise Entitled*

The sixth element requires a showing that the alleged preferential payments allowed the creditor to receive more than the creditor would otherwise be entitled to receive from the bankruptcy estate.  This element requires the Court to consider what the creditor would have received in a "hypothetical" Chapter 7 liquidation determined as of the petition date.[83]  Where the preference recipient is an unsecured nonpriority creditor, this element is usually easy to meet.[84]  "Unless unsecured creditors would receive a 100% payout, any unsecured creditor who receives a payment during the preference period is in a position to receive more than it would have received under a Chapter 7 liquidation.'"[85]

Here, the Buchholtz Defendants are nonpriority unsecured creditors in the Debtor's main bankruptcy case.  There is no need to construct a hypothetical liquidation because the Trustee is overseeing the Debtor's actual Chapter 7 liquidation in the main bankruptcy case.  The Trustee asserts that unsecured creditors will not be paid in full and the Buchholtz Defendants do not dispute this fact.  This means the alleged preferences the Buchholtz Defendants received allowed them to receive more than they would otherwise receive in the Debtor's chapter 7 case.[86]

---

[81] Summary Judgment Motion, Ex. 11, at 3 ("It appears from the face of the 2022 Balance Sheet that [the Debtor] was insolvent on December 31, 2022, before any fair value adjustment, but solvent following a fair value adjustment as noted below.").

[82] *Id.* at 5, Ex. A ("Recognizing the Judgment Liability is what leads to [the Debtor's] insolvency at the Measurement Date.").

[83] *Kim v. White Resources, LLC (In re Sklar Exploration Co., LLC)*, 649 B.R. 45, 50 (Bankr. D. Colo. 2023); *Connolly v. Asbestos Abatement, Inc. (In re Iley)*, 606 B.R. 871, 888 (Bankr. D. Colo. 2019).

[84] *In re Sklar Exploration Co., LLC*, 649 B.R. at 50.

[85] *In re Iley*, 606 B.R. at 889-90 (internal citations omitted).

[86] *In re Sklar Exploration Co., LLC*, 649 B.R. at 50; *In re Iley*, 606 B.R. at 889-90.

The Buchholtz Defendants argue that there are cross-guaranties on many of the Debtor's debts, and that some creditors were paid additional funds not accounted for in the Debtor's bankruptcy filing.  Such payments, Defendants argue, make it impossible to know how much they will receive on their debts.[87]  This argument misunderstands the purpose of this element.  "The purpose of § 547 is not to establish whether a creditor may have recovered all of the monies owed by the debtor from any source whatsoever, but instead whether the creditor would have received less than a 100% payout in a Chapter 7 liquidation."[88]   In other words, "courts should not focus on other sources of recovery available to a transferee, but rather what such transferee would hypothetically receive vis-à-vis other creditors within such creditor's particular class."[89]  Thus, the presence or absence of guaranties of some Debtor's unsecured debt is of no consequence.  The Trustee has established the sixth element of his preference claim as to all alleged preferential payments.

### 4.      Summary of Elements

In Summary, the Trustee has met his burden of establishing all necessary elements of his § 547(b) claim as to the rent payments for February 2023 ($16,900) and April 2023 ($45,000), as well as the $57,500 downpayment.  Disputed issues of fact remain as to whether the five other rent payments for September 2022 through January 2023, totaling $62,500, were made on account of antecedent debt and made while the Debtor was insolvent.

### 5.      Ordinary Course Defense

 The Buchholtz Defendants' Response argues that the rent payments were made in the ordinary course of business and are thus excepted from avoidance under § 547(c)(2).  Ordinary course is one of several preference-specific affirmative defenses listed in § 547(c).  Typically, these affirmative defenses are required to be pled in a defendant's answer at the beginning of the case.[90]  The Buchholtz Defendants did not include § 547(c) affirmative defenses in any version of their Answer.[91]  The Trustee contends this failure results in a waiver of the ordinary course defense.  It is true that, as a general rule, a party waives affirmative defenses that are not affirmatively pled.[92]

---

[87] Response, at 9.  The Buchholtz Defendants' argument that that the rent payments were applied to current rent obligations rather than past due rent has no relevance to the sixth element.  Their assertion of an ordinary course defense is discussed below.

[88] *Buchwald Capital Advisors LLC v. Metl-Span, Ltd. (In re Pameco Corp.)*, 356 B.R. 327, 336 (Bankr. S.D.N.Y. 2006) (internal citation omitted).

[89] *Itzhak v. Kahlon (In re Itzhak)*, 674 B.R. 460, 474 (Bankr. S.D.N.Y. 2025).

[90] Fed. R. Civ. P. 8(c), incorporated by Fed. R. Bankr. P. 7008.

[91] See ECF Nos. 22, 44, 63.

[92] *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070 (10th Cir. 2009) ("The general rule is that a party waives its right to raise an affirmative defense at trial when the party fails to raise the defense in

However, the Tenth Circuit has instructed that this rule should not be applied in a hyper-technical way but instead in line with the rule's purpose, which is to guarantee the opposing party has notice of any additional issue that may be raised at trial.  If the failure to plead an affirmative defense does not result in prejudice or unfair surprise to the opposing party, then there is no waiver.[93]  In particular, the Tenth Circuit has held that raising an affirmative defense for the first time in a summary judgment motion typically does not amount to a waiver.[94]

Here, the Buchholtz Defendants raised an ordinary course defense for the first time in their Response to the Trustee's Summary Judgment Motion.  The better practice certainly would have been to include the defense in their Answer.[95]  Nevertheless, the Trustee has not shown any prejudice caused by addressing the issue in the summary judgment context, and indeed, he addresses the merits of the defense in his Reply brief.  Thus, the Court concludes, in these specific circumstances, there is no waiver.

The ordinary course defense states that a trustee may not avoid a preferential transfer to the extent that transfer was "in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was . . . (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or (B) made according to ordinary business terms[.]"[96]  The purpose of this defense is to "protect recurring, customary credit transactions which are incurred and paid in the ordinary course of business of the Debtor and the transferee."[97]  "This statute requires proof of two things: (1) the debt arose in the ordinary course of business and either one of two possibilities: (2) the payments were made in the ordinary course of business that existed between these two business partners (a subjective test) or (3) the payments were made in accordance with industry standards (an objective test)."[98]

The Buchholtz Defendants bear the burden of proof at trial to establish all elements of this defense.[99]  However, because the Trustee is the movant for summary

---

its pleadings.").

[93] *Id*.; *United States v. Wolff (In re FirstPay, Inc.)*, 391 Fed. App'x 259, 269-70 (4th Cir. 2010).

[94] *Ahmad v. Furlong*, 435 F.3d 1196, 1201-02 (10th Cir. 2006); *see also In re FirstPay, Inc.*, 391 Fed. App'x at 269-70 (concluding no waiver occurred where defendant first raised ordinary course defense in its summary judgment motion).

[95] *Ahmad*, 435 F.3d at 1202 ("We agree . . .  that the best procedure is to plead an affirmative defense in an answer or amended answer.").

[96] 11 U.S.C. § 547(c)(2).

[97] *Kim v. White Resources, LLC (In re Sklar Exploration Co., LLC)*, 649 B.R. 45, 52 (Bankr. D. Colo. 2023) (citing *Waldschmidt v. Ranier (In re Fulghum Const. Corp.)*, 872 F.2d 739, 743 (6th Cir. 1989)).

[98] *Id.*

[99] 11 U.S.C. § 547(g).

judgment, he has the initial burden to identify "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim [or affirmative defense]."[100] Once the moving party meets this burden, the burden shifts to the nonmoving party to "establish both the applicability of the defense(s) and triable issues of fact as to the existence of each essential element of that defense."[101] The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."[102]

The Trustee argues the Buchholtz Defendants met none of the required elements of an ordinary course defense and offered no evidence to support it. The Court agrees. The Response mentions an ordinary course defense in only a conclusory fashion, stating that "11 USC 547(c)(2) provides an exception for these rent payments made in the ordinary course of business."[103] The Response provides the table of rent payments quoted above, but that table is not supported by an affidavit or other evidence regarding the details surrounding the rent payments. Furthermore, the information gathered from the table does not support an ordinary course defense. Instead, it shows that the payments were erratic and varied in amount, none of which matches what the Buchholtz Defendants allege was the required rent for any given month. The final rent payment of $45,000 was made two months after Debtor sold its assets and its lease obligation ended. The Buchholtz Defendants have offered no evidence to show the ordinary course of business between the Debtor and TLC in the past, nor industry standards for the payment of rent. The Court finds that, drawing all inferences in their favor, the Buchholtz Defendants cannot demonstrate the applicability of the ordinary course of business defense under § 547(c)(2) as to any of the alleged preferential payments.

## B. Aiding and Abetting Fraudulent Transfer

The Trustee's tenth claim asserts the Buchholtz Defendants aided and abetted the Debtor's fraudulent transfer of its assets and the DoD revenue to Seevers and STS. The Trustee relies on Colorado case law that generally recognizes claims for aiding and

---

[100] *Reams as Conservator for Steven Gills v. Landstar Ranger, Inc.*, 2026 WL 657047, at *2 (D. Colo. Mar. 9, 2026) (citing *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001)); *Conoco Inc. v. J.M. Huber Corp.*, 148 F. Supp. 2d 1157, 1168 (D. Kan. 2001), *aff'd,* 289 F.3d 819 (Fed. Cir. 2002); *Fed. Deposit Ins. Corp. v. Giammettei,* 34 F.3d 51, 54-55 (2d Cir. 1994).

[101] *Conoco Inc.*, 148 F. Supp. 2d at 1168 (citing *Fed. Deposit Ins. Corp. v. Giammettei,* 34 F.3d 51, 54-55 (2d Cir. 1994)).

[102] *Reams as Conservator for Steven Gills.*, 2026 WL 657047, at *2; *In re Wallace's Bookstores, Inc.*, 316 B.R. 254, 263 (Bankr. E.D. Ky. 2004) ("[W]hen relying on an affirmative defense, a defendant who is faced with a summary judgment motion has the same burden as a plaintiff against whom a defendant seeks summary judgment."); *Lichtenstein v. Aspect Computer (In re Computer Personalities Systems, Inc.)*, 2004 WL 1607005, at *5 (Bankr. E.D. Pa. Jul. 2, 2004) ("In response to the Trustee's allegations, the Defendants have the burden of establishing that, drawing all inferences in their favor, they would be entitled to each affirmative defense.").

[103] Response, at 9.

abetting tortious acts.[104]  An aiding and abetting claim has the following elements: (1) the party whom the defendant aids performs a wrongful act that causes an injury, (2) the defendant is generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance, and (3) the defendant knowingly and substantially assists the principal violation.[105]  Wrongful intent is not required to establish aiding and abetting, but reckless or negligent conduct is insufficient.[106] Substantial assistance requires proof that the defendant "proximately caused the violation, or that the encouragement or assistance be a substantial factor in causing the tort."[107]

### 1.   Element One—Liability for the Underlying Tort (Fraudulent Transfer)

To establish the first element, the Trustee must show that the Debtor fraudulently transferred its assets to Seevers and STS.[108]  The Trustee contends both that the Debtor made the transfer with actual fraudulent intent and/or that the transfer was constructively fraudulent.  Constructive fraudulent intent depends on whether the Debtor received reasonably equivalent value in exchange for the transfer of its assets and if the Debtor was or made insolvent by the transfer.[109]  Reasonably equivalent value involves three inquiries: "(1) whether value was given; (2) if value was given, whether it was given in exchange for the transfer; and (3) whether what was transferred was reasonably equivalent to what was received."[110]  To make this determination, the Court will need to assess the value of the assets the Debtor transferred.  As discussed above, there are disputed issues of material fact concerning those asset values.  Accordingly, the Court cannot determine on summary judgment that the Debtor made constructively fraudulent transfers to Seevers/STS.

---

[104] *Holmes v. Young*, 885 P.2d 305, 308 (1994) (discussing aiding and abetting breach of fiduciary duty); *Sender v. Mann*, 423 F. Supp.2d 1155, 1176 (D. Colo. 2006) (discussing aiding and abetting fraud under Colorado law); *Buffo v. Apex Trading*, Case No. 22CV2, 2022 Colo. Dist. LEXIS 601, at *9-10 (Boulder Cty. Dist. Ct. Oct. 12, 2022) ("[C]onspiracy and aiding and abetting are cognizable claims related to a CUFTA violation in Colorado.").

[105] *Holmes*, 885 P.2d at 308.

[106] *Sender*, 423 F. Supp.2d at 1176.

[107] *Id*. (citing *Aetna Cas. And Sur. Co. v. Leahey Const. Co*., 219 F.3d 519, 537 (6th Cir.2000)).

[108] Although the Court entered a default judgment against STS and Seevers on the Trustee's fraudulent transfer claim, that judgment is not binding as "law of the case" against the Buchholtz Defendnats who are not in default.  *Mrs. Condies Salad Co., Inc. v. Colorado Blue Ribbon Foods, LLC*, 2012 WL 5354848, at *5 (D. Colo. Oct. 30, 2012) ("Thus, in the context of a default judgment which comes early in the case and contains 'only the conclusions sought by plaintiff . . . without any testing of those conclusions by trial or argument,' no preclusive rule applies, including law of the case.").

[109] Colo. Rev. Stat. § 38-8-105(1); 11 U.S.C. § 548(a)(1)(B).

[110] *Rajala v. Gardner*, 661 Fed. App'x 512, 516 (10th Cir. 2016).

Determining actual fraudulent intent requires consideration of the various badges of fraud including: (a) the transfer or obligation was to an insider; (b) the debtor retained possession or control of the property transferred after the transfer; (c) the transfer or obligation was disclosed or concealed; (d) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (e) the transfer was of substantially all the debtor's assets; (f) the debtor absconded; (g) the debtor removed or concealed assets; (h) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (i) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (j) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (k) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.[111]  The Trustee has established at least three of these badges of fraud.  It is undisputed that the APA sale occurred shortly after the entry of the state court judgment.  It is also not disputed that the APA resulted in a transfer of substantially all of Debtor's assets.  As discussed above, the Trustee has established that the Debtor was insolvent as of the date the APA was executed, and the Buchholtz Defendants present no evidence to contradict this conclusion.

The Court need not find that all badges exist to conclude that the Debtor made the transfers with actual fraudulent intent.  However, the Court is unwilling, at the summary judgment stage, to conclude these three badges alone establish actual fraudulent intent.  This is especially true given that one of the key badges of fraud in this case is whether the Debtor received reasonably equivalent value in exchange for the transfers.  As discussed above, there are disputed issues of material fact concerning the value of the assets transferred.  As such, summary judgment is inappropriate as to the first element of the aiding and abetting claim.

### 2.    Elements 2 & 3–Awareness and Substantial Assistance

The second and third elements the Trustee must establish are that the Buchholtz Defendants were generally aware of their role as part of the Debtor's tortious activity at the time that they provided assistance, and knowingly and substantially assisted in the Debtor's fraudulent transfer.  These elements are often evaluated in tandem, such that "the weaker the evidence of knowledge is, the greater the showing of substantial assistance must be."[112]  A defendant's knowledge may be shown by circumstantial evidence, but that evidence must show that the defendant was "aware of the *wrongfulness* of the challenged conduct."[113]

---

[111] Colo. Rev. Stat. § 38-8-105(2)(a)-(k); *Taylor v. Rupp (In re Taylor)*, 133 F.3d 1336, 1338 (10th Cir. 1998).

[112] *Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 720 (8th Cir. 2019).

[113] *Zayed*, 913 F.3d at 715 (emphasis original); *see also Aetna Cas. and Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 535 (6th Cir. 2000).

20

There can be little dispute that Mr. Buchholtz was aware of, and substantially assisted in, the transfer of the Debtor's assets because he, along with Seevers, decided on the form of the APA, came up with the asset values used in the APA, and the terms of the promissory note.  In addition, Mr. Buchholtz signed the APA on behalf of the Debtor and transferred the DoD revenue to STS.  However, any determination that Mr. Buchholtz was aware of the *wrongfulness* of these transfers will depend on a determination that the Debtor did, in fact, make fraudulent transfers.  Because there are disputed issues of fact concerning the Debtor's commission of wrongful conduct (*i.e.* fraudulent transfers), there are also necessarily disputed issues of Mr. Buchholtz's awareness of the wrongfulness of that conduct.  Accordingly, the Court denies summary judgment on the aiding and abetting claim.

## CONCLUSION

For the reasons stated above, the Court hereby ORDERS as follows:

1. The Trustee's Summary Judgment Motion is GRANTED in part and DENIED in Part.

2. The Court grants the Trustee's Summary Judgment Motion on the seventh claim for relief under § 547 as to the following payments:

> a. February 2023 rent in the amount of $16,900;
> b. April 2023 rent payment in the amount of $45,000;
> c. $57,500 downpayment Debtor paid to TLC on March 20, 2023.

3. The Court denies the Trustee's Summary Judgment Motion on the seventh claim for relief under § 547 as to the following payments:

> a. September 2022 rent payment in the amount of $10,500;
> b. October 2022 rent payment in the amount of $14,000;
> c. November rent payment in the amount of $18,500;
> d. December rent payment in the amount of $14,000;
> e. January 2023 rent payment in the amount of $5,500.
>
> As to these transfers (totaling $62,500), the only issues remaining for trial are whether the Debtor made them on account of an antecedent debt and whether the Debtor made them while insolvent.

4.  The Court grants the Trustee's Summary Judgment Motion as to the Buchholtz Defendants' ordinary course defense as to all alleged preferential transfers.

5. The Court denies the Trustee's Summary Judgment Motion on the tenth claim for aiding and abetting fraudulent transfer.

6. Pursuant to Rule 56(g), the Court finds that the Debtor was insolvent as of February 10, 2023.

By separate order, the Court will set a status and scheduling conference.

21

Dated: June 2, 2026

BY THE COURT:

Michael E. Romero, Judge
United States Bankruptcy Court